IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WANDA FAYE MYRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:15cv604-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Wanda Faye Myrick ("Plaintiff") filed an application for disability and disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*., on January 11, 2012, alleging disability beginning on July 31, 2011. Plaintiff developed complications from a gynecological procedure that caused an abscess on her spine requiring decompressive surgery in late July 2011. Plaintiff's application for benefits was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision finding Plaintiff was disabled for a closed period from July 31, 2011, through November 30, 2012, but she was not disabled beginning December 1, 2012, through the date of the decision, August 16, 2013. Plaintiff appealed to the Appeals Council and presented additional evidence for review, but the Appeals Council denied review because some of the information did not provide a basis for changing the ALJ's decision, and some

of it was about a later time and therefore did not affect the decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Def.'s Consent to Jurisdiction (Doc. 12); Pl.'s Consent to Jurisdiction (Doc. 13). Based on the court's review of the record and the briefs of the parties, the court REVERSES the decision of the Commissioner and REMANDS the matter for further proceedings.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?
An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a prima facie case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal

---

[4] *See* 20 C.F.R. pt. 404 Subpt. P, app. 2.

conclusions, including determination of the proper standards to be applied in
evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 48 years old on the date of the hearing before the ALJ, and she had
completed college. Tr. 75, 108, 223. Her prior work was as a health educator. Tr. 263.
Following the administrative hearing, and employing the five-step process, the ALJ found
at Step One that Plaintiff "has not engaged in substantial gainful activity since July 31,
2011, the date" Plaintiff became disabled. Tr. 82. At Step Two, for the time periods from
July 31, 2011, through the date of the decision, the ALJ found that Plaintiff suffers from
the following severe impairments: "morbid obesity; decompressive thoracic laminectomy-
T3, 4, 5, and 6 secondary to thoracic epidural abscess—incurred secondary to uterine
ablation; cervical disc herniation with a history of significant cord compression; severe
degenerative disc disease at C6-7; degenerative changes of the lumbar spine; residual
thoracic myelopathy; peripheral neuropathy; and severe hypertension, without
medication[.]"   Tr. 82-83, 87. At Step Three, for the time period from July 31, 2011,
through November 30, 2012, the ALJ found that Plaintiff "did not have an impairment or
combination of impairments that met or medically equaled the severity of an impairment
listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and
404.1526)." Tr. 83. Next, for the time from July 31, 2011, through November 30, 2012, the
ALJ articulated Plaintiff's RFC, stating Plaintiff:

> had the residual functional capacity to perform sedentary work as defined in
> 20 CFR 404.1567(a) except the claimant did not possess the concentration,

> persistence, and pace necessary to safely understand, remember, and carryout
> [sic] simple instructions or attend to customary work pressures over the
> course of an eight-hour workday on a continuing basis.

Tr. 83. Having consulted with a VE at the hearing, the ALJ concluded at Step Four for the time period from July 31, 2011, through November 30, 2012, that Plaintiff was unable to perform any past relevant work. Tr. 86. Finally, at Step Five, and based upon the testimony of the VE, the ALJ determined that from July 31, 2011, through November 30, 2012, "considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed[.]" Tr. 86. Thus, the ALJ found Plaintiff disabled from July 31, 2011, through November 30, 2012. Tr. 87.

As for the time period from December 1, 2012, through the date of the decision, the ALJ made the same findings for Step One and Step Two as he did for the earlier time period. Tr. 87. At Step Three, the ALJ determined that beginning December 1, 2012, Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments" in the Listings.[5] Tr. 87. The ALJ then found that "[m]edical improvement occurred as of December 1, 2012, the date the claimant's disability ended (20 CFR 404.1594(b)(1))." Tr. 87. The ALJ found Plaintiff's medical improvement "is related to the ability to work because there has been an increase in" Plaintiff's RFC. Tr. 88. The ALJ articulated Plaintiff's RFC for the time period beginning December 1, 2012, stating that Plaintiff:

---

[5]The ALJ considered all the Listings, but for the period from July 31, 2011, through November 30, 2012, the ALJ specifically identified Listings 1.00M, 1.00Q, 1.02A, and 1.04, and for the period beginning December 1, 2012, the ALJ specifically identified Listings 1.02A and 1.04. R. 83, 87.

> has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can alternate between sitting, standing, and walking while remaining at her workstation at one-hour intervals. The claimant can sit, stand, and walk a total of four hours each over the course of an eight-hour workday. The claimant cannot walk or stand on uneven terrain. The claimant can frequently carry up to and no more than 20 pounds. The claimant can frequently reach over-head. The claimant is not otherwise manipulatively limited. The claimant can occasionally use her lower extremities for pushing, pulling and the operation of foot controls. The claimant cannot climb ladders, ropes, scaffolds, or poles. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel and crouch. The claimant cannot crawl. The claimant cannot work in extreme cold. The claimant can occasionally work in extreme heat. The claimant can occasionally work in wetness and humidity. The claimant can occasionally work while subject to vibration. The claimant cannot work at unprotected heights. The claimant cannot work with operating hazardous machinery.

Tr. 88. Having consulted with a VE at the hearing, the ALJ concluded at Step Four that beginning December 1, 2012, Plaintiff was capable of performing her past relevant work as a health educator, which is light, skilled work. Tr. 91. Finally, at Step Five, and based upon the testimony of the VE, the ALJ determined that beginning December 1, 2012, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 92. The VE testified Plaintiff could perform the jobs of addressing clerk, charge account clerk, and order clerk, but the ALJ recognized the Dictionary of Occupational Titles ("DOT") does not recognize an at-will sit-stand option that the ALJ assessed. "Nonetheless," the ALJ found, based on the VE's "education, training, and experience, combined with the DOT," the VE's "testimony was consistent with the DOT to the extent necessary for the purposes of agency guidance."

Tr. 92. Accordingly, the ALJ determined that Plaintiff's "disability ended December 1, 2012[.]" Tr. 92.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents five issues for the court to consider in its review of the Commissioner's decision. First, Plaintiff argues the Appeals Council erred by failing to consider the June 9, 2014, sworn statement of Plaintiff's treating physician, Tomeka Russell, M.D., as well as the July 7, 2014, statement of another vocational expert, Mr. John M. Long. Second, Plaintiff argues the Appeals Council erred in finding that an independent medical examination on September 9, 2013, by neurologist Gordon Kirschberg, M.D., did not provide a basis for changing the ALJ's decision.[6] Third, Plaintiff argues the ALJ improperly rejected the opinions of her treating physician, Dr. Russell. Fourth, Plaintiff argues the ALJ's determination of Plaintiff's RFC was not supported by substantial evidence, it did not provide an appropriate rationale or specific references to evidence supporting it, and it did not address Plaintiff's nonexertional impairments. Finally, Plaintiff argues the ALJ improperly dismissed Plaintiff's subjective testimony. Pl.'s Br. (Doc. 11) at 2-3, 9.

---

[6] In the body of the argument for the second issue, Plaintiff focuses primarily on the question of whether the Appeals Council and the ALJ adequately considered if Plaintiff met or medically equaled Listing 11.08. Pl.'s Br. (Doc. No. 11) at 9.

**V.    DISCUSSION**

**A.    The Appeals Council erred by not considering the treating physician's June 9, 2014, statement.**

"[T]he Appeals Council 'must consider new, material, and chronologically relevant evidence' that the claimant submits." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (per curiam) (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007), 20 C.F.R. §§ 404.970(b), 416.1470(b)). Evidence is chronologically relevant when it relates to the period on or before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b). The "evidence is material, and thus warrants a remand, if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011) (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)). The Appeals Council must show that it adequately considered the new evidence, and it is sufficient if the Appeals Council states that it considered the new evidence. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783 (11th Cir. 2014); *see also Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015). On the other hand, if the Appeals Council "perfunctorily adheres to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence." *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 941 (11th Cir. 2014).

Plaintiff submitted to the Appeals Council Dr. Russell's sworn statement taken on June 9, 2014. The Appeals Council "looked at" Dr. Russell's sworn statement, as well as Dr. Russell's treatment records from April 30, 2014, to May 1, 2014, and the vocational

report from Mr. Long dated July 7, 2014. [7] Tr. 2. It determined the information was about a time after the date of the ALJ's decision on August 16, 2013, and therefore did not affect the decision whether Plaintiff was disabled through August 16, 2013. Tr. 2. The Appeals Council informed Plaintiff that if she wanted the Commissioner to consider whether Plaintiff was disabled after August 16, 2013, she would need to file a new application for benefits. Tr. 2.

### 1.    The June 9, 2014, evidence is new and chronologically relevant.

Plaintiff argues, and the court agrees, that the evidence from Dr. Russell on June 9, 2014, is new and chronologically relevant to Plaintiff's disability determination. On June 9, 2014, Dr. Russell expressly agreed that Plaintiff's condition in June 2014 was essentially the same as it was when Dr. Russell first saw Plaintiff in May 2012, and that Dr. Russell had not noticed a significant improvement in her condition. Tr. 25. Dr. Russell described Plaintiff's condition since her July 2011 surgery, explaining,

> Initially she was told that she would never walk again. Then she progressed from not being able to walk to walking with a walker after receiving some home physical therapy. After that she has been able to progress from the walker to able—be able to walk without an assistive device. But she does use the wall a lot when she's ambulating and she will grab a counter if she's close to a counter.  She's trying really hard to walk without assistance but she still uses the assistance of the walls.
>     And she dealt with a lot of pain, a lot of spasticity in her legs. Basically, her muscles were extremely tight . . . .

Tr. 20-21. Dr. Russell stated that she personally observed Plaintiff propping up and rubbing her legs to alleviate the pain caused by spasticity, and "[i]f you have a spinal cord injury

---

[7] The Appeals Council states the report was April 7, 2014, which apparently is a typographical error. *Compare* Tr. 2 *with* Tr. 8.

spasticity is very common." Tr. 22. Dr. Russell stated that Plaintiff has "been dealing with this now for about three years. If it was going to get better, generally it would have gotten better within six months of the surgeries." Tr. 25. Dr. Russell also agreed with the independent medical examination on September 9, 2013, by neurologist Dr. Kirschberg, which the Appeals Council did consider.[8] Tr. 2, 26. Referring to Plaintiff's condition beginning in May 2012, Dr. Russell stated, "she just has been very consistent the entire two years I've had her as a patient." Tr. 42. Therefore the June 9, 2014, evidence from Dr. Russell is chronologically relevant to whether Plaintiff was disabled through August 16, 2013.

### 2.     The June 9, 2014, evidence is material.

The court also concludes the June 9, 2014, evidence from Dr. Russell is material. The ALJ relied on Dr. Russell's medical notes from 2012 and 2013 in finding that Plaintiff's health improved. The ALJ stated:

> In November 2012, the claimant's health was beginning to improve. In November 2012, *her gait was described as slow and unsteady* (Exhibit 3F, Page 12). By March 2013, the claimant's treating physician indicated the claimant was well developed, well nourished, was in no apparent distress, and she had a *normal gait*. The claimant had diagnoses of hypertension, obesity, and peripheral neuropathy. Her blood pressure was 153/80. A review of systems examination was primarily normal; however, the claimant was positive for paresthesia, bilateral lower extremity. On March 14, 2013, medical notes reflect the claimant's gait was slowed. However, on January 16, 2013 and March 26, 2013, her *gait was described as normal.*

Tr. 88-89 (emphasis added, citations to Tr. 422-26, 429 omitted). Based on these medical notes from Dr. Russell, the ALJ gave little weight to Dr. Russell's June 9, 2014, medical

---

[8] Similarly, the Appeals Council determined Mr. Long's July 7, 2014, opinion was out of time, but Mr. Long also considered the same statement by Dr. Kirschberg that the Appeals Council considered. Tr. 2, 8-10.

source statement that Plaintiff would experience symptoms and pain as a result of her

underlying medical condition. The ALJ concluded:

> Finally, the doctor indicated that the claimant did not appear to be malingering or exaggerating her complaints of pain (Exhibit 12F). *The undersigned gives little weight to the treating physician's opinion at Exhibit 12F, as it is consistent* [sic] *with the evaluations **by the same treating physician during the prior three months** (Exhibit 3F)before she authored and submitted her Medical Source Statement.* Thus, contrary to the doctor's opinion, the evidence does [sic] support the claimant's allegations of disability.

Tr. 89-90 (emphasis and boldface type in original);[9] Tr. 564-66 (Ex. 12F).

In contrast, when Dr. Russell was asked on June 9, 2014, about the medical notes

indicating that Plaintiff's gait was normal, the following exchange occurred:

> Q. I think one time where it says her gait is normal.
> A. Right.
> Q. Which is—
> A. And then the next time it's—
> Q. --it never—
> A. It's not—
> Q. It never has been.
> A. It's not normal.
> Q. Not even close?
> A. No, no.
> Q. I mean, if you can see her walk—
> A. Right, right.
> Q. –it—she—
> A. Very spastic, very –
> Q. She basically looks like she has cerebral palsy.
> A. Right, right.
> Q. So—
> A. Right.
> Q. So she has a very difficult time getting around.
> A. So strike out anything that says, gait is normal. Strike out—strike out anything that says, neurologic system is normal, musculoskeletal system is normal. It is totally abnormal.

---

[9] The quoted language from the ALJ contains what must be two typographical errors. Instead of "consistent" the ALJ most likely intended to write "inconsistent," and instead of "does" the ALJ most likely intended to write "does not."

Tr. 47-49. Based on Dr. Russell's June 9, 2014, corrections, the medical notes from 2013 support rather than contradict Dr. Russell's June 9, 2014, medical source statement, thus with the corrections the ALJ could not rely on the medical notes as good cause to disregard Dr. Russell's medical opinion. With good cause, an ALJ may disregard a treating physician's opinion, but the ALJ "must clearly articulate [the] reasons" for doing so. *See Phillips*, 357 F.3d at 1240-41; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight"); *see also* 20 C.F.R. § 404.1527(c). Dr. Russell's June 9, 2014, statements, coupled with the prior medical notes, support Dr. Russell's prior opinion that Plaintiff's pain would cause too much distraction for Plaintiff to complete work tasks. Tr. 565-66. In particular, Dr. Russell stated that she personally observed Plaintiff during the prior medical visits, Tr. 32; that Plaintiff's condition has not changed much since May 2012, Tr. 25; that Plaintiff needed to elevate her legs during the day to reduce swelling in her feet and take pressure off the nerves in her back, Tr. 32-35; that Plaintiff was not malingering, Tr. 38-41; and that her medical regimen since May 2012 to address her pain would cause her drowsiness or fatigue, Tr. 43-45. Consequently, "'there is a reasonable possibility that the new evidence would change the administrative outcome,'" *Flowers*, 441 F. App'x at 745 (citation omitted), and this case must be remanded under sentence four of 42 U.S.C. § 405(g) so that the evidence may be considered. *Ingram*, 496 F.3d at 1268 ("remand is appropriate under sentence four when 'the Appeals Council did not adequately consider the additional evidence' but is

appropriate under sentence six when 'evidence, that was not before the Secretary, has been submitted for the first time to [a federal] court'") (citation omitted).

### B.   Plaintiff's other issues are not ripe for review.

The impact of Dr. Russell's opinion affects Plaintiff's other arguments concerning Dr. Kirschberg's medical examination and his opinion that Plaintiff meets Listing 11.08, Mr. Long's opinion, Plaintiff's RFC, and Plaintiff's credibility. Pl.'s Br. (Doc. No. 11) at 3; Tr. 8, 88-92, 567-70. Because this court concludes the case must be remanded to consider the new evidence and its impact on Plaintiff's disability determination, a ruling on Plaintiff's other arguments would be premature.

Plaintiff asks the court to reverse and order the payment of benefits to her. Pl.'s Br. (Doc. No. 11) at 23. Such an award is possible "where the Secretary has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Because Plaintiff's case requires that additional evidence be considered, the court remands rather than awards benefits.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this matter is REMANDED back to the Commissioner. A separate judgment will issue.

Done this 4th day of October, 2016.

Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE

14